JS 44 (Rev. 04/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Frederick Nice, Esquire as Administrator of the Estate of Giuseppe Particianone

## DEFENDANTS

City of Philadelphia, Officer Bradford Conlon and Officer Antoine Hayes

**(b)** County of Residence of First Listed Plaintiff   Philadelphia
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Philadelphia
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Ross Feller Casey, LLP
1650 Market STreet, Suite 3450
Philadelphia, PA 19103   215-574-2000

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1  U.S. Government Plaintiff
- [ ] 2  U.S. Government Defendant
- [x] 3  Federal Question *(U.S. Government Not a Party)*
- [ ] 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 365 Personal Injury - Product Liability | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | [ ] 367 Health Care/ | | | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | | **INTELLECTUAL PROPERTY RIGHTS** | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability | Product Liability | | [ ] 820 Copyrights | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 340 Marine | [ ] 368 Asbestos Personal Injury Product Liability | | [ ] 830 Patent | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | [ ] 345 Marine Product Liability | **PERSONAL PROPERTY** | | [ ] 835 Patent - Abbreviated New Drug Application | [ ] 460 Deportation |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle | [ ] 370 Other Fraud | **LABOR** | [ ] 840 Trademark | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability | [ ] 371 Truth in Lending | [ ] 710 Fair Labor Standards Act | [ ] 880 Defend Trade Secrets Act of 2016 | [ ] 480 Consumer Credit (15 USC 1681 or 1692) |
| [ ] 190 Other Contract | [ ] 360 Other Personal Injury | [ ] 380 Other Personal Property Damage | [ ] 720 Labor/Management Relations | | [ ] 485 Telephone Consumer Protection Act |
| [ ] 195 Contract Product Liability | [ ] 362 Personal Injury - Medical Malpractice | [ ] 385 Property Damage Product Liability | [ ] 740 Railway Labor Act | **SOCIAL SECURITY** | [ ] 490 Cable/Sat TV |
| [ ] 196 Franchise | | | [ ] 751 Family and Medical Leave Act | [ ] 861 HIA (1395ff) | [ ] 850 Securities/Commodities/ Exchange |
| | | | [ ] 790 Other Labor Litigation | [ ] 862 Black Lung (923) | [ ] 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | [ ] 791 Employee Retirement Income Security Act | [ ] 863 DIWC/DIWW (405(g)) | [ ] 891 Agricultural Acts |
| [ ] 210 Land Condemnation | [x] 440 Other Civil Rights | **Habeas Corpus:** | | [ ] 864 SSID Title XVI | [ ] 893 Environmental Matters |
| [ ] 220 Foreclosure | [ ] 441 Voting | [ ] 463 Alien Detainee | | [ ] 865 RSI (405(g)) | [ ] 895 Freedom of Information Act |
| [ ] 230 Rent Lease & Ejectment | [ ] 442 Employment | [ ] 510 Motions to Vacate Sentence | | | [ ] 896 Arbitration |
| [ ] 240 Torts to Land | [ ] 443 Housing/ Accommodations | [ ] 530 General | | **FEDERAL TAX SUITS** | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - Employment | [ ] 535 Death Penalty | **IMMIGRATION** | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 950 Constitutionality of State Statutes |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities - Other | **Other:** | [ ] 462 Naturalization Application | [ ] 871 IRS—Third Party 26 USC 7609 | |
| | [ ] 448 Education | [ ] 540 Mandamus & Other | [ ] 465 Other Immigration Actions | | |
| | | [ ] 550 Civil Rights | | | |
| | | [ ] 555 Prison Condition | | | |
| | | [ ] 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [x] 1  Original Proceeding
- [ ] 2  Removed from State Court
- [ ] 3  Remanded from Appellate Court
- [ ] 4  Reinstated or Reopened
- [ ] 5  Transferred from Another District *(specify)*
- [ ] 6  Multidistrict Litigation - Transfer
- [ ] 8  Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. 1331

Brief description of cause:
Wrongful Death and Survival Action - Civil Rights - Shot and killed by police officers

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   [x] Yes   [ ] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*   JUDGE _____   DOCKET NUMBER _____

DATE   6/25/21

SIGNATURE OF ATTORNEY OF RECORD

---

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: _____ 2755 Century Boulevard, Wymossing, PA 19610 _____

Address of Defendant: _____ City of Philadelphia, 1515 Arch Street, 7th Floor, Philadelphia, PA 19102 _____

Place of Accident, Incident or Transaction: _____ Philadelphia, PA _____

---

**RELATED CASE, IF ANY:**

Case Number: _____    Judge: _____    Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?    Yes ☐    No ☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?    Yes ☐    No ☑

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?    Yes ☐    No ☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?    Yes ☐    No ☑

I certify that, to my knowledge, the within case ☐ is / ☑ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 06/25/2021 _____    _____ Must sign here _____    310164 _____
                              *Attorney-at-Law / Pro Se Plaintiff*    *Attorney I.D. # (if applicable)*

---

**CIVIL: (Place a √ in one category only)**

**A.    Federal Question Cases:**

☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts
☐ 2. FELA
☐ 3. Jones Act-Personal Injury
☐ 4. Antitrust
☐ 5. Patent
☐ 6. Labor-Management Relations
☑ 7. Civil Rights
☐ 8. Habeas Corpus
☐ 9. Securities Act(s) Cases
☐ 10. Social Security Review Cases
☐ 11. All other Federal Question Cases
      *(Please specify):* _____

**B.    Diversity Jurisdiction Cases:**

☐ 1. Insurance Contract and Other Contracts
☐ 2. Airplane Personal Injury
☐ 3. Assault, Defamation
☐ 4. Marine Personal Injury
☐ 5. Motor Vehicle Personal Injury
☐ 6. Other Personal Injury *(Please specify):* _____
☐ 7. Products Liability
☐ 8. Products Liability – Asbestos
☐ 9. All other Diversity Cases
      *(Please specify):* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, _____ Kevin Harden, Jr. _____, counsel of record *or* pro se plaintiff, do hereby certify:

☑ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☐ Relief other than monetary damages is sought.

DATE: 06/25/2021 _____    _____ Sign here if applicable _____    310164 _____
                              *Attorney-at-Law / Pro Se Plaintiff*    *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

Civ. 609 (5/2018)

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**
**CASE MANAGEMENT TRACK DESIGNATION FORM**

| | |
|---|---|
| FRESERICK NICE, ESQUIRE, AS ADMINISTRATOR OF THE ESTATE OF GIUSEPPE PARTICIANONE, DECEASED v. CITY OF PHILADELPHIA, OFFICERS BRADFORD CONLON AND ANTOINE HAYERS | CIVIL ACTION NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

| | |
|---|---|
| (a) Habeas Corpus- Cases brought under 28 U.S.C. § 2241 through § 2255. | ( ) |
| (b) Social Security- Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits. | ( ) |
| (c) Arbitration- Cases required to be designated for arbitration under Local Civil Rule 53.2. ( ) | ( ) |
| (d) Asbestos- Cases involving claims for personal injury or property damage from exposure to asbestos. | ( ) |
| (e) Special Management- Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.) | ( ) |
| (f) Standard Management- Cases that do not fall into any one of the other tracks | (X ) |

June 25, 2021       KEVIN HARDEN, JR,       Plaintiff
DATE                                              ATTORNEY FOR

(215) 574-2000       (215) 574-3080       kharden@rossfellercasey.com
TELEPHONE              FAX NUMBER            EMAIL ADDRESS

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **FREDERICK NICE, ESQUIRE as** : <br> **Administrator of the Estate of** : <br> **GIUSEPPE PARTICIANONE, deceased** : <br> : <br> **Plaintiff** : <br> : <br> **v.** : <br> : <br> **CITY OF PHILADELPHIA, and** : <br> **OFFICERS BRADFORD CONLON** : <br> **and ANTOINE HAYES, in their** : <br> **individual and official capacities** : <br> : <br> **Defendants** : | **Civil Action No.** <br><br> **JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff, Frederick Nice, Esquire, as Administrator of the Estate of decedent Giuseppe Particianone, through attorneys Robert Ross and Kevin Harden, Jr., of Ross Feller Casey, LLP, allege that Philadelphia Police Officers Bradford Conlon and Antoine Hayes, in their individual and official capacities as Philadelphia Police Officers, killed Giuseppe Particianone in violation of the United States Constitution, federal and state law. The allegations supporting this Complaint follow.

## INTRODUCTION

1.     On April 10, 2020, Philadelphia Police Officers Bradford Conlon and Antoine Hayes killed 33-year-old Giuseppe Particianone.

2.     After receiving reports of fired shots, Officers Conlon and Hayes responded to the area of 1500 South Bailey Street in the Grays Ferry section of South Philadelphia.

3.     Officers Conlon and Hayes approached Mr. Particianone's rowhome by way of a dimly lit rear alleyway.

4.     Mr. Particianone's rear yard was obscured by a tall cement wall. A tall piece of plywood propped up against the cement wall served as a makeshift gateway to the yard.

5.     Officers claim to have seen then 22-year-old Kaitlynn Pugliese with a gun, causing them to push down the plywood to apprehend her.

6.     In a public statement, the Philadelphia Police Department claimed the officers killed Mr. Particianone because Ms. Pugliese fired a gun at the responding officers. In later public statements, the Philadelphia Police Department walked back and offered that Mr. Particianone was killed because Ms. Pugliese pointed or aimed a gun at the responding officers.

7.     The physical evidence demonstrates that both of these claims are false and that Philadelphia Police Officers killed Mr. Particianone because (1) an inexperienced untrained officer needlessly, prematurely and recklessly fired his gun without properly communicating with his fellow officer and (2) that fellow officer then negligently, recklessly and perhaps criminally, fired a fusillade of bullets into a home without regard for any of its occupants, including Mr. Particianone, who was shot while on his hands and knees in between his own kitchen and living room. Despite claims that he was fleeing the police, his bullet wounds are front to rear with a downward trajectory.

8.     Ms. Pugliese, the alleged gunwoman, was shot in her side and buttock while fleeing the gunfire. Despite claims that she was pointing or aiming a gun at police, her entry wounds are rear to front.

9.     In an interagency communication, the Philadelphia Police Department admitted that Giuseppe Particianone was encountered for the first time "after safely securing [Ms.

Pugliese]" when he was "found … in the kitchen of the residence, and he had been shot as well, presumably when police discharged their weapons."

10.     Mr. Particianone was a lifelong South Philadelphian and was known as a friendly local neighborhood mechanic. He was the son of Rocco Particianone and his recently deceased mother, Tammie. He is survived by his father, brother Vincenzo, sister Emily, brother-in-law Jason, and his beloved niece, nephew and goddaughter. Rocco Particianone will be referred to by his full name to prevent confusion with his son.

11.     Mr. Particianone's death was unnecessary and caused by the City of Philadelphia's employees use of excessive and deadly force in violation of his rights under the Fourth Amendment of the United States Constitution secured pursuant to 42 U.S.C. § 1983. His death is another example of the City of Philadelphia and its policy makers failure to properly train, supervise, screen, discipline, transfer, counsel or otherwise control officers who are known or the City of Philadelphia and its policymakers should have known engage in the use of excessive and deadly force, including those repeatedly accused of violating Philadelphia Police Department rules, directives and protocols and local, state and federal laws. The City of Philadelphia and its policymakers continue to fail to implement and enforce policies practices and procedures for the Philadelphia Police Department that recognize and protect people like Mr. Particianone's constitutional rights. As a result of the City of Philadelphia's and its policymakers' failures, Giuseppe Particianone was shot down in his own home and died on an operating table at Penn Presbyterian Medical Center.

**PARTIES**

12.     Plaintiff, Frederick Nice, Esquire, is the administrator of the Estate of Giuseppe Particianone. On June 18, 2021, the Honorable Tracey L. Gordon, Register of Wills for Philadelphia County, granted Letters of Administration to Attorney Nice for the Estate of Giuseppe Particianone. At the time of his death, Mr. Particianone was a resident of the City and County of Philadelphia with an address of 1521 South Bailey Street, Philadelphia, Pennsylvania. Attorney Nice's principal place of business is 2755 Century Boulevard, Wyomissing, Pennsylvania.

13.     Attorney Nice has been designated administrator of Mr. Particianone's estate by Mr. Particianone's father, Rocco Particianone.

14.     Defendant City of Philadelphia is a municipality in the Commonwealth of Pennsylvania and is officially responsible, through its Police Commissioner, for the policies, practices and customs of the Philadelphia Police Department. Defendants Conlon and Hayes are employees of the City of Philadelphia's Police Department.

15.     Defendant Antoine Hayes is a police officer employed by Defendant City of Philadelphia's Police Department. His actions that are the subject matter of this Complaint involve his employment as a police officer and at all times relevant to this action, he was acting under color of law and within the scope of his employment pursuant to statutes, ordinances, regulations, policies, customs and usage of defendant City of Philadelphia and its police department. Defendant Hayes is also being sued in his individual capacity for his actions.

16.     Defendant Bradford Conlon is a police officer employed by Defendant City of Philadelphia's Police Department. His actions that are the subject matter of this Complaint involve his employment as a police officer and at all times relevant to this action, he was acting under color

of law and within the scope of his employment pursuant to statutes, ordinances, regulations, policies, customs and usage of defendant City of Philadelphia and its police department. Defendant Hayes is also being sued in his individual capacity for his actions.

17.    At all times relevant to this Complaint, defendants Hayes and Conlon acted in concert and in conspiracy with one another to deprive Giuseppe Particianone of his constitutional rights. Each were personally involved in the excessive and deadly force committed against Giuseppe Particianone and the cover-up that followed this homicide.

## JURISDICTION AND VENUE

18.    This court has jurisdiction over the subject matter of the Complaint under 42 U.S.C. § 1983 and 28 U.S.C. §§ 1331, 1343(a)(3), 1343(a)(4) and 1367(a).

19.    Venue is proper in the Eastern District of Pennsylvania pursuant to 28 U.S.C. 1391(a) in that the Defendants are subject to personal jurisdiction within the Eastern District of Pennsylvania and the events that gave rise to this action occurred within the Eastern District of Pennsylvania.

20.    The matter in controversy exceeds $150,000.00.

## JURY DEMAND

21.    Plaintiff demands a trial by jury on all issues and claims set forth in this Complaint, pursuant to the Seventh Amendment to the United States Constitution and Federal Rule of Civil Procedure 38(b).

## THE KILLING OF GIUSEPPE PARTICIANONE

22.    On April 10, 2020, Philadelphia Police received reports of gunshots in the area of 1500 South Bailey Street in the Grays Ferry section of South Philadelphia.

23.    Two officers arrived in separate police cars: Officers Bradford Conlon and Antoine Hayes. Officer Conlon had approximately one year of experience as a Philadelphia Police Officer. Officer Hayes had approximately eleven years of experience as a Philadelphia Police Officer.

24.    The officers joined together to investigate the source of the fired shots.

25.    Their investigation led them down the dimly-lit rear alley of 1500 South Bailey Street.

26.    As they proceeded down the alley, the defendant officers' attention was drawn to the rear of 1521 South Bailey Street because they heard "singing" coming from the home.

27.    There is an approximately 7-feet tall stone wall that forms a perimeter for the backyard[1]:



---

[1] This photo depicts the rear backyard after repairs were performed by the owner of the property.

28.     Officers could not see over the wall but claim they were able to view through the entryway of the yard, which at the time, had a piece of plywood propped up as a makeshift door[2]:



29.     Officers claim that they were able to view around the plywood and observe Kaitlynn Pugliese exit the open rear door of the home with a gun. The officers pushed down the plywood and immediately opened fire. They did not announce that they were police and given the lighting and the positions of the police, it is unlikely any police identification would have been identified by any onlooker.

30.     Interestingly, Officer Conlon fired the first shot and took cover. Officer Hayes then emptied his clip into 1521 South Bailey Street without regard for anyone that was inside the home, including the decedent, Giuseppe Particianone.

31.     Police claim that Giuseppe Particianone, a six-foot four-inch 300+ pound man was standing in the rear door of the home when they began firing at Ms. Pugliese, which caused him to be hit by crossfire as he and Ms. Pugliese ran away.

---

[2] Upon information and belief, the plywood depicted in this image is the same piece of plywood from the night at issue.

32.    A post-mortem examination reveals that the projectiles that entered Mr. Particianone's body traveled through his body "front to back, right to left, and downward."

33.    Neither Officers Conlon or Hayes are taller than Giuseppe Particianone and there is a step when you enter the doorway at 1521 South Bailey Street.

34.    The post-mortem examination of Giuseppe Particianone revealed that he was shot by someone who was shooting downward while they were facing each other, not as he was fleeing and standing upright.

35.    Ms. Pugliese was shot in her side and buttock. This is consistent with someone turning to run and fleeing, not pointing and aiming a gun.

36.    Immediately after the shooting, officers described Giuseppe Particianone's positioning in the home: he was inside the living room of the home facing the rear door of the home on his hands and knees, consistent with someone who had been shot inside the home while facing the rear door. He was not facing the front of the home consistent with flight. No officer described seeing him turnaround before being shot.

37.    Bullet holes were observed all throughout the home, including in walls, furniture and front door of 1521 Bailey Street. Blood stains suggest Giuseppe Particianone was shot inside the home.

38.    The physical evidence demonstrates that Giuseppe Particianone was not in the rear yard when shots were fired. He was inside his home and rooms away from the defendant officers. The officers opened fire on an occupied home without regard for the people inside.  The City of Philadelphia's policies, practices, customs and procedures, or lack thereof, and the defendant Officers' own individual negligence and recklessness, caused Giuseppe Particianone's death.

39.    Rocco Particianone, Giuseppe's father, was lying on the couch when the shooting started and witnessed his son shot and bleeding in the living room.

40.    Giuseppe's last words to his father were "Pop, I'm shot."

41.    The Defendant Officers broke Philadelphia Police Department protocols for officer-involved shootings and immediately began searching the home and moving evidence at their own crime scene and counting the number of fired cartridge casings in the rear of the home so they could get their stories straight.

42.    Upon information and belief, the defendant Officers tampered with evidence at the scene of the crime hoping to concoct an explanation for killing Giuseppe Particianone while he stood in his kitchen, unarmed and unaware of their presence.

43.    Upon information and belief, defendant Conlon fired a shot without warning defendant Hayes because he was inexperienced, untrained and reckless. Startled by the unnecessary shot, Officer Hayes let off a volley of shots into an occupied home without regard for anyone inside, striking a fleeing and scared Kaitlynn Pugliese and killing an unarmed and defenseless Giuseppe Particianone.

44.    Giuseppe Particianone suffered a penetrating downward gunshot wound to his abdomen that perforated his small intestines, colon and left common iliac artery and vein, and a perforating downward gunshot wound to the left side of his upper chest that exited his left arm in the tricep region with a downward trajectory. The latter wound suggests Particianone was shot while on his hands and knees.

45.    Giuseppe was transported to Penn Presbyterian Medical Center by Philadelphia Police. He was in or near cardiopulmonary arrest and not responding to commands or moving his

extremities. Doctors noted one gunshot wound on the "left deltopectoral groove/shoulder" and one gunshot wound on the "abdomen slightly to the right in the periumbilical region."

46.    Based upon his presentation, doctors decided to perform a resuscitative left anterolateral thoracotomy. A thoracotomy is a surgical procedure where a large incision is made between the ribs to see and reach the interior organs of the chest and thorax.

47.    Sadly, following the thoracotomy incision, Giuseppe began moving his legs in pain. The left thoracotomy was aborted and a weak but palpable pulse was detected.

48.    Doctors initially believed Giuseppe Particianone was non-responsive. Therefore, the emergent medical procedure proceeded as quickly as possible to save his life. Unfortunately, Giuseppe felt the pain associated with a maximally-invasive surgical procedure and was unable to be controlled because of the pain. He began to violently move and roll off the gurney and required significant effort from staff and physicians to be calmed down and stabilized. He was given an IV, intubated and received numerous blood transfusions. An emergent laparotomy, which is a surgical procedure to open, explore and examine all of the abdominal organs, was initiated. Doctors discovered massive internal bleeding.

49.    Surgeons attempted multiple life-saving procedures but Giuseppe Particianone died at 1:42 a.m. on April 10, 2020. He was 33.

50.    Kaitlynn Pugliese was arrested and charged with firearms offenses and manslaughter for the death of Giuseppe Particianone.

51.    Officers Conlon and Hayes were cleared in the shooting by Philadelphia Police Department Internal Affairs and the Philadelphia District Attorney's Office. No one seems to care that the defendant officers versions of the incident are in controversy with the physical evidence.

## VIOLATIONS OF PHILADELPHIA POLICE DIRECTIVES

52.     The Philadelphia Police Department promulgates rules, policies and procedures through directives.

53.     Philadelphia Police Department Directive 10.1 speaks to the Use of Force Involving the Discharge of Firearms[3].

54.     Philadelphia Police Department Directive 10.1 includes specific prohibitions, which include provisions that:

  a. "[p]olice officers shall ensure their actions do not precipate the use of deadly force by placing themselves or others in jeopardy by taking unnecessary, overly aggressive, or improper actions. It is often tactically superior police procedure to withdraw, take cover or reposition, rather than engage in the immediate use of force."

  b. "Police officers shall not discharge their firearms to subdue a fleeing individual who presents no immediate threat of death or serious bodily injury to the officer or another person."

55.     A policy of the Philadelphia Police Department mandates that "[p]olice officers shall not use deadly force against another person unless they have an objectively reasonable belief that they must protect themselves or another person from death or serious bodily injury. Furthermore, an officer is not justified in using deadly force at any point in time where there is no longer an objectively reasonable belief that the suspect is dangerous, even if deadly force would have been justified at an earlier point in time.

56.     The directives state that "[p]olice officers using their professional judgment should not discharge their weapon when doing so might unnecessarily endanger innocent people."

57.     Despite these Philadelphia Police Department Directives, the defendant officers failed to comply with them because of systemic failures by the City of Philadelphia to train,

---

[3] The publicly available Philadelphia Police Department Directives were last updated on 5-13-2021. It is unclear whether the cited portions have been updated since the police killed Giuseppe Particianone.

supervise and discipline officers that have been involved in the excessive and deadly use of force, including but not limited to, the defendant officers.

58.     The use of excessive and deadly force by Philadelphia Police Officers is a common practice that has been become a custom in the Philadelphia Police Department due to the failure to train, supervise and discipline officers that subscribe to and employ the custom and practice of excessive and deadly force.

59.     Despite these Philadelphia Police Department Directives, the defendant officers fired into a home despite available cover in the form of an approximately 7-foot concrete wall and no knowledge of whether they had a clear isolated target. This is further demonstrated by the officers' projectiles penetrating the front door of the home. This recklessness endangered the public because the projectiles could have traveled through the home, onto Bailey Street and into neighboring homes, vehicles and pedestrian traffic.

60.     The Philadelphia Police Department has not promulgated rules, policies and procedures concerning the discharge of firearms into occupied structures like a South Philadelphia rowhome. This is an abysmal systemic policy failure by the Philadelphia Police Department's policy makers and City of Philadelphia's leadership.

## THE UNABATED USE OF EXCESSIVE AND DEADLY FORCE BY THE PHILADELPHIA POLICE DEPARTMENT

61.     On May 14, 2013, the Philadelphia Inquirer reported that despite a significant decrease in violent crimes and assaults on police officers in Philadelphia, the number of shootings by Philadelphia Police Officers resulting in death or injury had climbed to their highest level in a decade.

62.     The Philadelphia Inquirer reported that Philadelphia had one of the highest rates of shootings by police in the United States of America.

63.    In response to the sharp increase in shootings, Philadelphia Police Commissioner Charles H. Ramsey stated that he believed Philadelphia had "a solid policy and consider it best practice" concerning shootings by police.

64.    In the years prior, the Philadelphia Police Department abolished an accountability officer position after the release of a comprehensive report on shootings by police. The report noted a "troubling trend that deserves close attention and monitoring" concerning shootings by police.

65.    Since as early as 2004, the City of Philadelphia was aware of a custom, policy or practice subscribed to by Philadelphia Police Officers where they fired more shots than necessary at suspects.

66.    Despite his assertion that the Philadelphia Police Department had a "solid policy" that he considered to be "best practice," Commissioner Ramsey requested technical assistance from the U.S. Department of Justice Office of Community Oriented Policing Services to "reform deadly force policies, practices, and related processes in the PPD, taking into account national standards, best practices, current and emerging research, and community expectations."

67.    The DOJ report, in stark contrast to Philadelphia Police Department policymakers' assertions, found that (1) officers do not receive a regular, consistent training on the department's deadly force policy; (2) officers are not adequately trained on the use of deadly force; (3) the department's use of force policies are fragmented and confusing; (4) officers are not provided sufficient alternatives to the use of deadly force; (5) officers are not adequately trained on techniques to de-escalate citizen encounters and thus reduce the use of deadly force; (6) the department's disciplinary mechanism is inconsistent, subject to chronic delays, and frustrated by

inadequate investigations; and (7) 73% of officers that were found to have violated department policy during a shooting incident were not suspended or terminated.

68.    The City of Philadelphia has been on notice of inadequate training, supervision, discipline, policies, procedures, directives and customs regarding police usages of excessive and deadly force since as early as 2013.

69.    The City of Philadelphia and its police department have failed to implement the DOJ Report's recommendations.

70.    The City of Philadelphia's inadequate training, supervision, discipline, policies, procedures, directives and customs regarding police usages of excessive and deadly force caused the death of Giuseppe Particianone.

71.    As of the filing of this Complaint, the City of Philadelphia does not have any policies or training addressing the discharge of firearms into occupied structures like Giuseppe Particianone's home.

72.    Under Pennsylvania law, a person commits an offense if they knowingly, intentionally or recklessly discharge a firearm from any location into an occupied structure. An occupied structure is defined as any structure, vehicle or place adapted for overnight accommodation of persons or for carrying on business therein, whether or not a person is actually present. The offense is a felony of the third degree.

73.    Police departments nationwide were put on notice of the danger of firing upon homes following the death of Breonna Taylor on March 20, 2020, which occurred one month before Philadelphia Police killed Giuseppe Particianone.

74.    Police killed Breonna Taylor under eerily similar circumstances: police alleged another person fired a shot at them and police fired without regard for the life of anyone present

in Ms. Taylor's home and killed her. Nationwide protests followed, including protests in Philadelphia, that highlighted the reckless actions of the police officers that killed Ms. Taylor. Media coverage highlighted that an involved officer was arrested for recklessly shooting into an occupied structure. The settlement of her civil matter also received nationwide media attention. Policy makers in the Philadelphia Police Department were present at these protests, commented on these protests and the circumstances of Ms. Taylor's death to media and despite these protests, neglected to create policies, protocols or training to prevent the killing of innocent bystanders, like Mr. Particianone, in their homes due to excessive and deadly police uses of force.

75.    Even if the Philadelphia Police Department had enacted rules intended to prohibit or curtail the behaviors and actions that caused the death of Giuseppe Particianone, the City of Philadelphia's refusal and failure to discipline officers that violate department policy or engage in behaviors that cause serious bodily injury and death is Philadelphia Police Department custom and tradition.

76.    The Philadelphia Police Department's custom and tradition of refusing and failing to discipline officers who break rules, violate policy and engage in behaviors that cause serious bodily injury and death is celebrated by the Police Department's bargaining unit, the Fraternal Order of Police Philadelphia Lodge #5, and silently acquiesced to by the City of Philadelphia despite its knowledge of these constitutionally flagrant customs and traditions.

77.    The Philadelphia Police Department's custom and tradition of refusing and failing to discipline officers who break rules, violate policy and engage in behaviors that cause serious bodily injury and death is well known to Philadelphia Police Officers.

78.    On the rare occasion that Philadelphia Police Offices are penalized, officers are aware that even if they are disciplined, suspended or even terminated, the City of Philadelphia's

acquiescence to inadequate disciplinary due process will likely result in a reversal of any ordered discipline that is adverse to Philadelphia Police Officers.

79.     Officers in the Philadelphia Police Department consider disciplinary suspensions and terminations to be paid time-off or paid vacation because of the high likelihood that their discipline will be reversed and they will be awarded back pay and promotions at some point during the City of Philadelphia's faulty and sham arbitration process.

80.     An example of the City of Philadelphia's faulty and sham arbitration process for police officers includes the City's continued acquiescence to employing Officer Cyrus Mann. Officer Mann shot 3 people in 3 years, including one fatally. He was fired and reinstated with back pay and deletion of any misconduct from his record.

81.     Another example of the City of Philadelphia's faulty and sham arbitration process for police officers involves Officer Ryan Pownall. Officer Pownall shot David Jones in the back while Jones was fleeing. It was the second time Pownall shot a man in the back as he ran away. Pownall is currently charged with murder and has the full support of the Philadelphia Police Department's bargaining unit, the Fraternal Order of Police Philadelphia Lodge #5.

82.     Another example of the City of Philadelphia's faulty and sham arbitration process for police officers involves the shooting of Phillipe Holland, a delivery driver that was shot by Philadelphia Police Officers that failed to properly identify themselves or adhere to Philadelphia Police Department directives concerning the discharge of firearms into vehicles. Both officers returned to street duty shortly after their use of excessive force on Mr. Holland.

83.     Philadelphia Police Officers are aware of the custom and tradition in the Philadelphia Police Department that it is almost guaranteed that there will be no significant consequences for shooting people.

84.    The City of Philadelphia's policymakers know that Philadelphia Police Officers conduct themselves knowing that it is almost guaranteed that they will face no significant consequences for shooting people. The City of Philadelphia tacitly approves the unconstitutional customs that originate from this wicked frame of mind.

## **GIUSEPPE PARTICIANONE**

85.    Giuseppe Particianone was born on September 24, 1986 to Rocco and Tammie Particianone.

86.    Giuseppe was a mechanic in South Philadelphia and loved to spend time with his family and friends. Given his height, Giuseppe was particularly popular with the smallest members of his family (his niece, nephew and goddaughter). For example:



87.    Giuseppe had no criminal history.

88.     But for the actions of the Defendants, Giuseppe Particianone would have survived to earn significant wages, start a family of his own and continue to provide for his already existing family in economic and non-economic ways.

89.     As a result of the Defendant's misconduct, Giuseppe Particianone's survivors seek compensation for the economic and non-economic losses they have suffered as a result of his death, including medical expenses, funeral and burial expenses, costs of estate administration, the pecuniary value of the services, support, comfort, care and society he would have provided to them had he not died and damages for the incalculable emotional and psychological losses they have suffered as a result of Giuseppe's death .

## COUNT ONE: WRONGFUL DEATH ACTION

90.     Plaintiff, Frederick Nice, Esquire, as Administrator of the Estate of Giuseppe Particianone, deceased, hereby brings Wrongful Death claims pursuant to 42 Pa.C.S. § 8301 and Pa.R.C.P. 2202(a), on behalf of all those persons entitled by law to recover damages as a result of the wrongful death of Giuseppe Particianone.

91.     Giuseppe Particianone died intestate. He did not have children. Therefore, his beneficiary is his father, Rocco Particianone.

92.     No other action has been brought to recover for Giuseppe Particianone's death.

93.     Plaintiff claims all available damages under the Pennsylvania Wrongful Death Statute for financial contributions and the loss of future services, support, society, comfort, affection, guidance, tutelage, and contribution that the Plaintiff's decedent, Giuseppe Particianone, would have rendered to the wrongful death beneficiaries but for his traumatic, untimely and unnatural death occurring as a result of the medical treatment which is subject to the present litigation.

94.    Plaintiff claims damages for payment for all medical bills and expenses.

95.    Plaintiff claims damages for payment of funeral and burial expenses.

## COUNT TWO: SURVIVAL ACTION

96.    Plaintiff also brings a Survival Action under the Pennsylvania Survival Statute, 42

Pa.C.S.§ 8302, and pursuant to 20 Pa.C.S. § 3373, for all damages recoverable under the Statute,

including, but not limited to, loss of income both past and future income potential, as well as pain

and suffering prior to death, and for emotional distress suffered by Giuseppe Particianone from

the initiation of the assault upon him until the time of his death.

## COUNT THREE: 42 U.S.C. § 1983 EXCESSIVE FORCE
## AGAINST DEFENDANT, OFFICER BRADFORD CONLON
## INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY

97.    Defendant Conlon's actions on the occasion in question were wrongful, malicious

and reckless in depriving Giuseppe Particianone of his constitutional rights.

98.    Defendant Conlon failed to act as an objectively reasonable officer would have

acted in the same or similar circumstances.

99.    Defendant Conlon, without legal or necessary justification or the need to do so,

used excessive and deadly force as described above and killed Giuseppe Particianone.

100.    Defendant Conlon, without legal or necessary justification or the need to do so,

used excessive and deadly force by firing his gun into an occupied home

101.    Defendant Conlon denied Giuseppe Particianone's right to be free from the use of

excessive force in violation of the Fourth Amendment to the United States Constitution.

102.    The force used by Defendant Conlon was objectively unnecessary, excessive and

unreasonable under the circumstances, as Giuseppe Particianone did not pose an immediate threat

to the safety of Defendant Conlon or others.

103.    Defendant Conlon embarked on a willful, malicious, reckless and outrageous course of conduct that was intended to cause and, in fact did cause Giuseppe Particianone's death and his family to suffer extreme and severe mental and emotional distress, anxiety, terror and agony.

104.    Plaintiff seeks survival damages, as stated above, including for the nature and extent of Decedent's injuries, pre-death pain and suffering, emotional distress, and loss of life and enjoyment of life, as well as all available wrongful death damages available under the law.

**WHEREFORE**, Plaintiff demands judgement in his favor, and against Defendant Conlon pursuant to 42 U.S.C. §1983, in an amount in excess of $150,000.00, including interest, delay damages, costs of suit, general and specific damages, including both survival and wrongful death damages, exemplary damages as provided by law, attorneys' fees under U.S.C. 1985 and 1988, and any other remedies legally appropriate.

## COUNT FOUR: 42 U.S.C. § 1983 EXCESSIVE FORCE AGAINST DEFENDANT, OFFICER ANTOINE HAYES INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY

105.    Defendant Hayes' actions on the occasion in question were wrongful, malicious and reckless in depriving Giuseppe Particianone of his constitutional rights.

106.    Defendant Hayes failed to act as an objectively reasonable officer would have acted in the same or similar circumstances.

107.    Defendant Hayes, without legal or necessary justification or the need to do so, used excessive and deadly force by firing his gun into an occupied home.

108.    Defendant Hayes denied Giuseppe Particianone of his right to be free from the use of excessive force in violation of the Fourth Amendment to the United States Constitution.

109.   The force used by defendant Hayes was objectively unnecessary, excessive and unreasonable under the circumstances, as Giuseppe Particianone did not pose an immediate threat to the safety of defendant Hayes or others. Defendant Hayes embarked on a willful, malicious, reckless and outrageous course of conduct that was intended to cause and, in fact did cause Giuseppe Particianone's death and plaintiff to suffer extreme and severe mental and emotional distress, anxiety, terror and agony.

110.   Plaintiff seeks survival damages, as stated above, including for the nature and extent of Decedent's injuries, pre-death pain and suffering, emotional distress, and loss of life and enjoyment of life, as well as all available wrongful death damages available under the law.

**WHEREFORE**, Plaintiff demands judgement in his favor, and against Defendant Hayes pursuant to 42 U.S.C. §1983, in an amount in excess of $150,000.00, including interest, delay damages, costs of suit, general and specific damages, including both survival and wrongful death damages, exemplary damages as provided by law, attorneys' fees under U.S.C. 1985 and 1988, and any other remedies legally appropriate.

## COUNT FIVE: MUNICIPAL LIABILITY

111.   The conduct of Defendants Conlon and Hayes evinces the excessive and unreasonable use of force in violation of Giuseppe Particianone's constitutional rights.

112.   The conduct described in this Complaint and the training and disciplinary failures of the Philadelphia Police Department demonstrate that the City of Philadelphia failed to properly train officers in the probable cause and reasonable suspicion to stop or otherwise detain a citizen, the use of deadly force, the excessive use of force, and the identification of an actual or imminent

threat of death or serious bodily injury, which was a moving force in the deprivation of Giuseppe Particianone's constitutional rights and life.

113.   Prior to April 10, 2020, the Philadelphia Police Department knew or should have known of these training failures through the Department of Justice report, complaints filed against officers, civil lawsuits, settlements and media coverage.

114.   Defendants conduct and the training and disciplinary failures of the Philadelphia Police Department demonstrates that the City of Philadelphia failed to enforce and promulgate written policies regarding the use of deadly force, discharges of firearms into occupied structures, the excessive use of force and identification of an actual or imminent threat of death or serious bodily injury, which was a moving force in the deprivation of Giuseppe Particianone's constitutional rights and life.

115.   The supervision and disciplinary failures of the Philadelphia Police Department demonstrates that the City of Philadelphia failed to supervise and discipline Police Officers that use excessive force, and by doing so tacitly approved unlawful and unconstitutional excessive and deadly use of force, particularly in shooting incidents, which was a moving force in the deprivation of Giuseppe Particianone's constitutional rights and life.

116.   The conduct described in this Complaint, as well as the supervision and disciplinary failures of the Philadelphia Police Department demonstrates that the City of Philadelphia failed to supervise and discipline officers similarly situated to defendants Conlon and Hayes, and by doing so communicated tacit approval of their unlawful and unconstitutional behavior which was a moving force in the deprivation of Giuseppe Particianone's constitutional rights and life.

117.    By reason of the policies and practices of Defendants described in this Complaint, Plaintiff's beneficiary experienced severe pain and suffering and the loss of his son, for which he is entitled to recover damages. The acts and omissions described in this Complaint also caused decedent's pain and suffering, loss of enjoyment of life, and death.

118.    Plaintiff seeks survival damages, as stated above, including for the nature and extent of Decedent's injuries, pre-death pain and suffering, emotional distress, and loss of life and enjoyment of life, as well as all available wrongful death damages available under the law.

**WHEREFORE**, Plaintiff demands judgement in his favor, and against Defendant City of Philadelphia pursuant to 42 U.S.C. §1983, in an amount in excess of $150,000.00, including interest, delay damages, costs of suit, general and specific damages, including both survival and wrongful death damages, exemplary damages as provided by law, attorneys' fees under U.S.C. 1985 and 1988, and any other remedies legally appropriate.

## COUNT SIX - ASSAULT AND BATTERY
### AGAINST DEFENDANT CONLON

119.    As described in this Complaint, Defendant Conlon, while acting within the course and scope of his duties as a Police Officers for the PPD, without provocation, warrant, necessity, or legal justification, assaulted and battered Giuseppe Particianone by pointing his gun at Giuseppe and shooting him several times, thereby causing Giuseppe Particianone's injuries and death.

120.    Plaintiff seeks survival damages, including for the nature and extent of Decedent's injuries, pre-death pain and suffering, emotional distress, and loss of life and enjoyment of life, as well as all available wrongful death damages available under the law.

**WHEREFORE**, Plaintiff demands judgment in his favor, and against Defendant Conlon in an amount in excess of One Hundred and Fifty Thousand Dollars ($150,000.00), including interest, delay damages, costs of suit, general and specific damages, including both survival and wrongful death damages, exemplary damages as provided by law, and any other damages legally appropriate at the time of jury trial.

## COUNT SEVEN - PUNITIVE AND EXEMPLARY DAMAGES
### AGAINST DEFENDANT CONLON

121.    The conduct of Defendant Conlon was malicious, willful, and wanton.

122.    Accordingly, Plaintiff requests punitive and exemplary damages to deter this type of conduct in the future. In the alternative, the defendant Conlon's reckless disregard of Giuseppe Particianone's rights, safety, welfare and life is more than momentary thoughtlessness, inadvertence or misjudgment. This conduct is unconscionable, gross and indecent. Resultingly, Plaintiff requests punitive and exemplary damages be awarded against Defendant Conlon.

## COUNT EIGHT - ASSAULT AND BATTERY
### AGAINST DEFENDANT HAYES

123.    As described in this Complaint, Defendant Hayes, while acting within the course and scope of his duties as a Police Officers for the PPD, without provocation, warrant, necessity, or legal justification, assaulted and battered Giuseppe Particianone by pointing his gun at Giuseppe and shooting him several times, thereby causing Giuseppe Particianone's injuries and death.

124.    Plaintiff seeks survival damages, including for the nature and extent of Decedent's injuries, pre-death pain and suffering, emotional distress, and loss of life and enjoyment of life, as well as all available wrongful death damages available under the law.

**WHEREFORE**, Plaintiff demands judgment in his favor, and against Defendant Hayes in an amount in excess of One Hundred and Fifty Thousand Dollars ($150,000.00), including interest, delay damages, costs of suit, general and specific damages, including both survival and wrongful death damages, exemplary damages as provided by law, and any other damages legally appropriate at the time of jury trial.

**COUNT NINE - PUNITIVE AND EXEMPLARY DAMAGES**
**AGAINST DEFENDANT HAYES**

125.    The conduct of Defendant Hayes was malicious, willful, and wanton.

126.    Accordingly, Plaintiff requests punitive and exemplary damages to deter this type of conduct in the future. In the alternative, the defendant Hayes's reckless disregard of Giuseppe Particianone's rights, safety, welfare and life is more than momentary thoughtlessness, inadvertence or misjudgment. This conduct is unconscionable, gross and indecent. Resultingly, Plaintiff requests punitive and exemplary damages be awarded against Defendant Hayes.

**WHEREFORE,** Plaintiff demands judgment in his favor, and against Defendants, jointly and severally, pursuant to 42 U.S.C. § 1983, in an amount in excess of One Hundred and Fifty Thousand Dollars ($150,000.00), including interest, delay damages, costs of suit, general and specific damages, including both survival and wrongful death damages, exemplary damages as provided by law, attorneys' fees under U.S.C. 1985 and 1988, und any other damages legally appropriate at the time of jury trial.

**ROSS FELLER CASEY, LLP**

By: _____
Robert Ross, Esquire (ID #47152)
Kevin Harden, Jr., Esquire (ID #310164)
One Liberty Place - Suite 3450
1650 Market Street
Philadelphia, PA 19103
Tel: 215-574-2000
*Attorneys for Plaintiff*

Dated: June 25, 2021